The next case, number 18-2241, United States v. Manuel Vega-Monserrate. Attorney Novas, please go ahead and introduce yourself on the record. May it please the court. Good morning, Your Honor. Jose Luis Novas, appearing on behalf of Appellant Manuel Vega-Monserrate. Appellant concedes from the get-go in this case that what really applies here is plain error review as argued by the government. So we are going to go to that. Did you argue plain error in your brief on appeal? No, Your Honor. It was not argued. So you've got a problem then, right? If it's plain error review and you don't argue plain error review in your brief, we have case law saying you waived plain error review, don't we? Well, Your Honor, we believe that when it's plain error, it may be taken up at any time before the court. We wanted to make that, we made that concession to the government after reviewing the government's brief. I wanted to go squarely on those points because those, the plain error review will encompass a reasonableness review at any rate, which is what we argued in our brief. So essentially, while Appellant did object at sentencing when the court chose to abandon the plea agreement stipulation of facts. Counsel, his objection is, sentence me, I'm begging you, sentence me to the stipulated amount, not to the amount in the pre-sentence report. And he's not challenging that and there's no objections to the pre-sentence report also. That's correct, Your Honor. The objection was to abandoning the safe harbor of essentially for the court of a stipulation of drug amounts, foregoing that and then going on a incongruent record, essentially a pre-sentence report that relied on a report of investigation, which is contrary to other documents on the record. Namely, for starters, when this case began with the filing of a complaint, there was a distinct, there was an affidavit under oath subscribed to by an agent where three types of controlled substances were detailed in very that gave rise or that came, the complaint that came after the affidavit, in fact, had a felt marker cross out on the powder cocaine charge. And that's because the agents did not find any powder cocaine there. But that's usually what happens when there's a complaint. The agents unless it's a weekend or long weekend, the person is taken to the magistrate judge and that's why the complaint has to be filed quickly. After that, drugs are tested, there's an indictment, discovery, et cetera, et cetera. So the fact that a complaint is filed is not dispositive. That's correct, Your Honor, but it's an indication of how matters unravel later on because when the incongruities, incongruities that rendered the explication given by the sentencing court as a deficient. So it's really, that's why our argument at brief was that this was from the procedural standpoint, it was an unreasonable sentence insofar as the sentencing court, the first mistake it makes, it concludes, and this is at page 61, this is the transcript of the sentencing hearing, it's page 61 of our appendix. The court concluded, I'm quoting, that during the arrest, the agents discovered heroin, crack cocaine, cocaine, and marijuana. Now, the PSR, that we're not going to go over again, the issue presented by the affidavit under oath that does not include powder cocaine as a controlled substance. We go straight to the PSR, which at paragraph 17, it has a correct, correct rendering of matters in that, and I quote the PSR, the paragraph informs that a brown bag containing the following items was found on the floor of the living room. 98 vials filled with the white powder which tested positive to crack cocaine, 113 bags filled with the powder which tested positive for heroin, 72 bags and six plastic containers all filled with the green leafy substance which tested positive for marijuana, in addition to $820 were found in the bag. The PSR then goes on to list a report of investigation that merely appears to be a lab report. It does not indicate that the substance, I mean, from the face of the report of investigation, it's not clear whether this powder cocaine, which is listed, was found elsewhere outside of the current image of the premises. We don't know. But that's because there's no objection to the pre-sentence report. There was no objection to the pre-sentence report. We concede that, and that's why we conceded. How does that happen? You get a pre-sentence report that is driving up the offense level by seven to nine levels, a huge increase, and no discussion of it. And now we're hearing this unappealed. Yes. What happens in the procedure that I would think this would be the focus of the defense? There was an objection attempt in senior honor. It was not a rule 132 objection. There's no doubt that during proceedings below, counsel for appellant did not follow the process to object. This incongruity in the PSR, because there is an incongruity, your honor. There's an incongruity that begins with the affidavit stating what was actually found, and then it surfaces when the report of investigation brings in 129 baggies of powder cocaine. I mean, these things don't come out of the blue during the procedure. And so, yes, the better practice would have been to object that during proceedings. It was not objected. There was an objection of sentencing based on abandoning the stipulation of facts regarding drug quantities, which just related to an amount of marijuana. So appellant was entitled to a sentence where his, the court's, explication was buttress or was grounded in a record that did not incongruous elements as we had in this case. Why would, I'm not sure I followed the last point about entitlement. If there's no objection to the PSR, and so this stuff isn't resolved ahead of time, or at least the issues aren't teed up so that people know what witnesses to bring in or what testimony to bring in, it seems to me that the opportunities for sandbagging are endless. So why the entitlement? I beg your pardon, Your Honor, the question? He's entitled to be sentenced based on what the, basically what the evidence showed at sentencing, as opposed to bringing these to the attention of the probation office and the government ahead of time so that they can be hashed out, or at least teed up so that the findings. I don't understand your point that there's an entitlement at that stage. Well, there's always a right for a criminal defendant to be sentenced according to correctly calculated guidelines, no matter what. I mean, when you're going to lose your liberty for a considerable amount of time. But that would require then the judge to say, well, there's this additional amount, nobody's objecting it, but let me have a hearing, or let me call the hearing, or let me continue the hearing. But there was not even a request for that. So then you would be placing, under that argument, the district judge would have the burden of establishing something that's not objective. That's my concern. Well, if we go to counsel's objection during the sentencing hearing, it was clear as to objecting a determination of dark quantities and anything other than the stipulation. But if you look at the transcript, counsel is saying, you know, it's not an objection, but basically she's saying, please sentence according to the plea agreement. This is what we agreed to. But there's no specific request. Judge, that specific amount, we object. Even if we don't object in the pre-sentence report, we're still objecting. There's no baseline fact. Make a finding, but counsel doesn't even request that. And again, it's something that's now being raised in appeal. I know you came to the case for appellate purposes, but it's like requesting, give the defendant a second shot, send the case back, and so we can re-litigate something that didn't get litigated. I understand the court's point. And the defense has to concede that that would have been the proper process during the hearing to make that, articulate that specific objection as to that. May I finish? Just briefly, yes. Yes. Abandoning the factual stipulation that was made. Thank you very much. At this time, counsel for the government can introduce herself on the record to begin. Good morning again, Your Honors. May it please the court, Julia McIgnatis for the government. Your Honors, again, this is a case of double waiver. Here, Mr. Vega-Monserrata never objected to the PSR in violation of Local Rule 132, which results in waiver. Even if you were to sidestep that waiver, there was no objection to the inclusion of cocaine seized in the apartment at the sentencing hearing, which would make it an unpreserved error for appeal, triggering plain error review, which was not argued in the brief, and the four prongs have not been established, which, again, results in waiver. In any event, there was no error here, plain or otherwise, in the district court's inclusion of the cocaine in the drug quantity determination in Mr. Vega-Monserrata's appeal, and the only issue is whether this cocaine should have been included in the drug quantity amount. And here we have the PSR, which was unobjected to, which relies upon the lab reports detailing all of the amounts that were seized from the apartment. Now, Mr. Vega-Monserrata's reliance on the criminal complaint is misplaced. That's not the operative charging document here. While it is true that the criminal complaint was what started this case after the criminal complaint began and the defendants were arrested, this case did go to a grand jury, and they were indicted for four different substances, including the cocaine. All of the discovery had been provided, as is showed by the minutes from the status conferences, and the lab report was indeed provided, and that showed on the record, because at one point, Mr. Vega-Monserrata's counsel requested an audience with him that he be brought back to Puerto Rico so they could discuss this lab report. So the district court's reliance upon that 5.5 converted amount was not error, because it was sufficiently reliable in the unobjected PSR. And even as a fallback argument, even if it was error, this only was 5.5 kilograms. So even if you were to excise it from the drug quantity determination, the base offense level would have been exactly the same. Let me ask you from a practical standpoint, because obviously I sat in the district for many years, but from the U.S. Attorney's perspective, obviously when pleas are reached, the recommendation, unless it's a C1C type plea, it's a recommendation to the court, and the court defends that plea at that particular time during sentence. But the practical effect is, correct me if I'm wrong, that defendants who, if the judge decides to use the relevant conduct and sentence above that, then they come, and what they're arguing is, give me another opportunity to go back and re-challenge that. That's what's happening, correct? Yes, Your Honor. Well, this is a second bite at the apple. This is looking at the record, noting an inconsistency that was in the complaint versus the lab report, and quite frankly, asking for a second bite at the apple. And I know the government now is constricted to the four corners of the appeal, but review of the discovery in this case would answer the question here, that it was an inadvertent admission, and that was later corrected through the indictment of this case, and it was never challenged by any of the parties. They had the discovery, which included photographs, and if you look, if you're looking at the four corners of this appeal, after the indictment was in fact rendered, the United States did put a designation of evidence listing all of the items that were in discovery, listing the photographs. They're not, they were not included as exhibits to that, but it shows what was given to each of these defendants in and then a lab report, which was subsequently rendered, was given to the parties, and then plea negotiations ensued. So, looking at the four corners of this appeal, and the fact that there was no objection to it, the fact that there is discussion in the status conferences that were waiting for the lab results, shows that this information was reliable. It was never objected to in the PSR, and the district court was free to consider this reliable information. And now, it would just be going back for a second shot at the apple that would be futile. Do you know from the record, I don't have the entire record here of the briefs, from the day, I believe it was October 12th, this gentleman is arrested. Do you know when exactly the complaint is filed? Is it filed usually that same day or the next day? Your Honor, I do have the complaint here, and it was, it was filed, the complaint was filed on April 13th, 2018. Okay, I got the date wrong. It's okay, Your Honor, and it, the, the search warrant was the day before. Okay. So, the search happened the day before. The time the complaint is filed with the court, because obviously a person is under federal custody, and a complaint has to be filed, it's within 24 hours. It was in 24 hours, Your Honor. And within 24 hours, drugs never go back to lab and are tested the way they are by the time the present on the June 27th status conference. So, about two months later, all parties had received the lab report, and it was provided, and, and the minutes of that status conference show that that was provided, and all of the discovery had been provided, and they were pending negotiations. If there are no further questions from this panel, we rest on our briefs. Thank you. Thank you. That concludes argument in this case.